IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2005 MAR -1 ₱ 3: 27

SIGN_____
BY DEPUTY CLERK

| | |
|---|---|
| HODGES CRUMB, TIMOTHY DOYLE, DARYL GATHERS, GLADYS JACKSON, LOUDY JONES, SANDRA O'SHAUGNESSY, THERESA SHINARD-DUCRE, JACQUELYN WHITE, MAUREEN SANCHEZ, AND GLORIA SMITH<br><br>Plaintiffs,<br><br><br>ELI LILLY AND COMPANY,<br><br>Defendant. | § § § § § § § § § § § § § § § § § |

CASE NO. 05-142-B-M1

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

---

**ORIGINAL COMPLAINT**

---

**INTRODUCTION**

This lawsuit arises from the manufacture and sale of a pharmaceutical called ZYPREXA (also known as OLANZAPINE). Defendant ELI LILLY AND COMPANY, (hereafter "ELI LILLY") created and marketed ZYPREXA, which the Food and Drug Administration ("FDA") has approved for the treatment of the severe psychoses schizophrenia and bipolar disorder. ELI LILLY, however, has aggressively encouraged doctors, most of whom are not psychiatrists, to prescribe ZYPREXA for a wide range of far milder, "off-label" conditions for which the FDA has not approved it, such as depression, anxiety, attention deficit disorder and difficulty sleeping. Moreover, for years, it has been increasingly clear that ZYPREXA causes diabetes, pancreatitis, diabetic

BW

coma and other related illnesses. Yet ELI LILLY has continued to promote it, to the point where the drug is ELI LILLY's best selling product in the world, earning the company billions of dollars. This case illustrates the problems inherent in the recent overuse of ZYPREXA: unsuspecting patients treated with a drug that was defectively designed and then casually and negligently prescribed – resulting in serious injury.

## THE PARTIES

1.     The following persons are plaintiffs, who reside in the city and state indicated:

| Last Name | First Name | City | State |
|-----------|-----------|------|-------|
| Crumb | Hodges | Jonesville | LA |
| Doyle | Timothy | Starks | LA |
| Gathers | Daryl | New Orleans | LA |
| Jackson | Gladys | Baton Rouge | LA |
| Jones | Loudy | Lake Charles | LA |
| O'Shaugnessy | Sandra | New Orleans | LA |
| Shinard-Ducre | Theresa | LaPlace | LA |
| White | Jacquelyn | New Orleans | LA |
| Sanchez | Maureen | New Orleans | LA |
| Smith | Gloria | Bella Rose | LA |

2.     At all times herein mentioned, Defendant ELI LILLY was and is a corporation existing under the laws of incorporation of the State of Indiana, with its principal place of business in Indianapolis, Indiana, doing business in the State of Tennessee, and within this judicial district. ELI LILLY, in interstate commerce and in this judicial district, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and/or sold ZYPREXA to distributors as well as retailers for resale to physicians, hospitals, medical practitioners and the general public.

## JURISDICTION AND VENUE

3.      At all times relevant to this suit, ELI LILLY was a corporation doing business in Tennessee.

4.      Venue is proper in this district because some of the Plaintiffs' claims arose in this district.

## FACTUAL ALLEGATIONS

### A.      ELI LILLY's Design and Marketing of ZYPREXA

5.      ZYPREXA is among a group of second-generation antipsychotic drugs developed in the late 1980s and early 1990s for the treatment of schizophrenia and bipolarism.  In contrast to the first generation of such drugs, called "typical" antipsychotics, ZYPREXA and the other drugs developed at the same time are called "atypical" antipsychotics.

6.      ELI LILLY manufactured, created, designed, tested, labeled, sterilized, packaged, distributed, supplied, marketed, sold, advertised, and otherwise distributed ZYPREXA.

7.      ELI LILLY widely advertised ZYPREXA as a safe and effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than typical antipsychotics and other atypical antipsychotics.

8.      Through an aggressive marketing campaign carried out by its sales representatives across the country and in this District, ELI LILLY persuaded doctors to prescribe ZYPREXA for treating disorders for which the FDA had not approved ZYPREXA.  Such off-label uses of ZYPREXA have included prescriptions for depression, anxiety, attention deficit disorder, trouble sleeping and other conditions

that are far milder than the severe psychotic disorders for which ZYPREXA was developed and approved. ELI LILLY's campaign to induce the widespread off-label use of ZYPREXA was so successful that ZYPREXA became ELI LILLY's best selling product in the world, earning the company billions of dollars in sales.

9.      ZYPREXA causes, and greatly increases the risk of developing, hyperglycemia, diabetes, pancreatitis, diabetic coma, and dramatic and rapid weight gain.

10.      In order to boost its profits from ZYPREXA, ELI LILLY purposefully minimized and understated the health hazards and risks associated with it. Through literature and oral statements, ELI LILLY relayed positive information, including testimonials from satisfied users, and manipulated statistics to suggest ZYPREXA's safety, while downplaying the drug's known adverse and serious health effects. In addition, ELI LILLY falsely and fraudulently withheld relevant information from potential ZYPREXA users and their doctors.

11.      Reports in the medical literature revealing the causal link between ZYPREXA and diabetes, pancreatitis, hyperglycemia, diabetic coma, weight gain and other adverse conditions began to grow in volume at least as early as 1998. The following are only a few of the many examples of this literature:

          a.      On October 15, 1998, an article in *Biological Psychiatry* entitled "Novel Antipsychotics and New Onset Diabetes" linked ZYPREXA to hyperglycemia and diabetes and discussed potential biological mechanisms for the association.

b.     In September-October 1999, *Psychosomatics* reported on seven cases of new-onset diabetes that developed between five weeks and seventeen months after ingestion of ZYPREXA.

c.     In November 2001, in an article in the *Journal of the American Medical Association* written by medical officers from the FDA's Center for Drug Evaluation and Research and a Duke University Medical Center physician, the authors reported a potential link between ZYPREXA and hyperglycemia, the predecessor to diabetes, in adolescents.

d.     In December 2001, FDA staff members published a report in *American Journal of Medicine* linking ZYPREXA to diabetes based on data gathered from the FDA's adverse drug reaction database.

e.     A paper written in late 2001 in the *Journal of Clinical Psychiatry* reported that the FDA had been alerted to nineteen case reports of diabetes associated with the use of ZYPREXA. One patient in the study died of necrotizing pancreatitis.

f.     On July 1, 2002, Duke University Medical Center issued a press release about a finding linking ZYPREXA to early onset diabetes. The Duke researchers identified 289 cases of diabetes in patients who took ZYPREXA. They

published their findings in the July 2, 2002 edition of the *Medical Journal of Pharmacotherapy*, Vol. 22, No. 7, pages 841-52.

g.   In September 2002, the *American Journal of Psychiatry*, in the "letters to the editor" section, described sixteen cases of new-onset diabetes associated with ZYPREXA usage.

12.   In addition to the published reports about ZYPREXA, there were numerous other reports published in the medical literature about the link between other atypical antipsychotic drugs and diabetes, pancreatitis, hyperglycemia, diabetic coma and other adverse conditions.   Because of the pharmacological similarity between ZYPREXA and these other atypical antipsychotic drugs, these reports should also have alerted ELI LILLY to the dangers of ZYPREXA.

13.   Aside from these published reports, ELI LILLY, on information and belief, possessed internal, nonpublic information that did or should have indicated to it that ZYPREXA causes diabetes, pancreatitis, hyperglycemia, diabetic coma and other adverse conditions, including ELI LILLY's own clinical trials, internal studies, adverse drug reaction data, correspondence and reports from prescribing physicians, and/or internal scientific analyses.

14.   In 1999, the European Commission required ELI LILLY to warn ZYPREXA users in Europe of the association between the drug and diabetes, and recommended that doctors monitor patients at risk for diabetes.

15.   In April 2002, an emergency report issued by the Japanese Health and Welfare Ministry regarding the side effects of ZYPREXA noted two deaths and

multiple diabetic comas attributable to ZYPREXA, and warned against diabetics taking the drug.

16.     On May 3, 2002, the United Kingdom's Medicines Control Agency linked ZYPREXA to diabetes, noting that several patients taking the drug had developed diabetes-related complications.

17.     In May 2003, ELI LILLY added pancreatitis to the section of its labeling identifying post-introduction reports of adverse events.

18.     In September 2003, the FDA required ELI LILLY and other makers of atypical antipsychotic drugs to revise their labeling to warn of hyperglycemia and recommend glucose monitoring of diabetics and those with risk factors for diabetes.

19.     In November 2003, the American Diabetes Association, the American Psychiatric Association, the American Association of Clinical Endocrinologists and the North American Association for the Study of Obesity convened a Consensus Development Conference on Antipsychotic Drugs and Obesity and Diabetes.  These associations reached a consensus that ZYPREXA is associated with an increased risk of obesity, diabetes, and insulin abnormality, and that the likelihood of developing these "severe metabolic disease[s]" should be "an important consideration" in deciding to prescribe them.

20.     On March 1, 2004, ELI LILLY issued a "Dear Doctor" letter to doctors informing them of the increased risk of hyperglycemia and diabetes in patients taking ZYPREXA and describing the labeling changes.

21.     ELI LILLY did not fully and adequately communicate to the innumerable doctors to whom its sales representatives were aggressively marketing ZYPREXA that the drug causes diabetes, pancreatitis, hyperglycemia, diabetic coma and massive weight gain.

**B.     Plaintiffs' Use of ZYPREXA and Resulting Injuries**

22.     Plaintiffs' physicians prescribed ZYPREXA for use by Plaintiffs for schizophrenia and bipolarism, as well as for off-label conditions experienced by those Plaintiffs who do not suffer from psychotic disorders, such as depression, anxiety, difficulty sleeping, and attention deficit disorder.

23.     Plaintiffs ingested the drug over periods of months or years.

24.     ELI LILLY did not inform Plaintiffs' prescribing physicians that ZYPREXA causes diabetes, pancreatitis and diabetic coma.

25.     As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiffs suffered injury valued at a sum that exceeds the jurisdictional amount required by this Court.  Specifically, Plaintiffs have been diagnosed with diabetes, pancreatitis and/or diabetic coma – conditions caused by the ingestion of ZYPREXA.

26.     Because Plaintiffs now suffer from diabetes, pancreatitis and/or diabetic coma caused by ZYPREXA, they have endured physical and mental pain and suffering and will experience physical and mental pain and suffering in the future.  In addition, they have been and will be forced to expend money on otherwise unnecessary medical care to monitor and treat their injuries caused by ZYPREXA.

## FIRST CAUSE OF ACTION
### [Strict Products Liability/Failure to Warn]

27.     Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

28.     ELI LILLY has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting ZYPREXA, and through that conduct has knowingly and intentionally placed ZYPREXA into the stream of commerce with full knowledge that it would arrive in the judicial district where the Plaintiffs ingested it.

29.     ELI LILLY sold, distributed, supplied, manufactured, and/or promoted ZYPREXA to Plaintiffs and their prescribing doctors.   Moreover, ELI LILLY expected the ZYPREXA it was selling, distributing, supplying, manufacturing and/or promoting to reach prescribing physicians and consumers in the places where Plaintiffs reside without substantial change in the condition of the product.

30.     Plaintiffs used ZYPREXA for its intended purpose, namely, as a pharmaceutical.

31.     When Plaintiffs used it, ZYPREXA was defective in that it was not accompanied by sufficient warnings of its dangerous side effects, though these were known and/or reasonably scientifically knowable at the time of distribution.   The reasonably foreseeable use of ZYPREXA, i.e., ingestion, involved substantial dangers not readily recognizable by ordinary consumers, including Plaintiffs.   ELI LILLY failed to warn of the known and/or knowable likelihood of injury caused by ZYPREXA, including but not limited to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain.

32.     ELI LILLY knew that ZYPREXA would be taken by people like Plaintiffs without inspection for or investigation of defects.  Plaintiffs neither knew nor had reason to know, before and at the time of the use of ZYPREXA, of the existence of its dangerous, hidden side effects.

33.     ELI LILLY's failure to adequately warn of ZYPREXA's dangers, including but not limited to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain, proximately caused Plaintiffs' injuries.  Had ELI LILLY adequately warned of ZYPREXA's dangers, Plaintiffs would not have taken it.

**SECOND CAUSE OF ACTION**
**[Strict Products Liability/Defective Design]**

34.     Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

35.     ELI LILLY has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting ZYPREXA, and through that conduct has knowingly and intentionally placed ZYPREXA into the stream of commerce with full knowledge that it would arrive in the places where Plaintiffs ingested it.

36.     ELI LILLY sold, distributed, supplied, manufactured, and/or promoted ZYPREXA to Plaintiffs and their prescribing doctors.  Moreover, ELI LILLY expected the ZYPREXA it was selling, distributing, supplying, manufacturing and/or promoting to reach prescribing physicians and consumers, including Plaintiffs and their prescribing doctors, in the places where they reside without substantial change in the condition of the product.

37.     ELI LILLY placed ZYPREXA into the stream of commerce in a defectively designed and unreasonably dangerous condition in that the drug's foreseeable risks exceeded its benefits – especially considering that the benefits for conditions other than schizophrenia and bipolarism are, at best, inadequately tested and uncertain.

38.     Alternatively, ZYPREXA was defective in design or formulation in that, when it was placed in the stream of commerce, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other forms of treatment for Plaintiffs' conditions.

39.     ELI LILLY failed to adequately test ZYPREXA, leading to its defectiveness.

40.     Because ZYPREXA was defectively designed and was not reasonably safe, its risks outweighed its benefits.  This subjected Plaintiffs to risks that far exceeded ZYPREXA's questionable benefits.

41.     Plaintiffs used ZYPREXA for its intended purpose, namely, as a pharmaceutical.

42.     ZYPREXA's defective design proximately caused Plaintiffs' injuries.

### THIRD CAUSE OF ACTION
**[Negligence]**

43.     Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

44.     At all times herein mentioned, ELI LILLY had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market,

examine, maintain supply, provide proper warnings and take steps to assure that ZYPREXA did not cause users, including Plaintiffs, to suffer from unreasonable and dangerous side effects such as diabetes, pancreatitis and diabetic coma.

45.   At all times herein mentioned, ELI LILLY knew, or in the exercise of reasonable care should have known, that ZYPREXA was likely to injure users, including Plaintiffs, because of improper and inadequate manufacturing, compounding, testing, inspection, packaging, labeling, distribution, marketing, examination, and/or warning.

46.   ELI LILLY so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, overpromoted and supplied ZYPREXA that it was dangerous and unsafe for the use and purpose for which it was intended, *i.e.,* as a pharmaceutical.

47.   ELI LILLY negligently failed to adequately and fully warn of the nature and scope of dangers and side effects associated with ZYPREXA, including diabetes, pancreatitis and diabetic coma .

48.   ELI LILLY was aware of the probable consequences of its negligence.  Despite the fact that ELI LILLY knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known and/or knowable risks associated with the drug.  ELI LILLY thereby acted with a conscious disregard of the safety of Plaintiffs.

49.   ELI LILLY's negligence proximately caused Plaintiffs' injuries.

## FOURTH CAUSE OF ACTION
### [Breach of Implied Warranty]

50.   Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

51.   ELI LILLY manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold ZYPREXA. Before ZYPREXA was prescribed to Plaintiffs, ELI LILLY impliedly warranted to Plaintiffs that the drug was of merchantable quality and safe for the use for which it was intended, *i.e.*, as a pharmaceutical.

52.   Plaintiffs reasonably relied on ELI LILLY's skill and judgment in using ZYPREXA.

53.   ZYPREXA was unsafe for its intended use and was not of merchantable quality, as warranted by ELI LILLY, in that it had dangerous side effects, including but not limited to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain, when put to its intended use.  ZYPREXA was unaccompanied by warnings of its dangerous side effects, though these were either known or reasonably scientifically knowable at the time of distribution.

54.   Plaintiffs sustained injury as a direct and proximate result of ELI LILLY's breach of implied warranty.

55.   After Plaintiffs were made aware that their injuries were a result of the aforesaid product, notice was duly given to Defendant of the breach of said warranty.

## FIFTH CAUSE OF ACTION
### [Breach of Express Warranty]

56.     Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

57.     ELI LILLY expressly warranted that ZYPREXA – as well as its manufacture, compounding, design, distribution, testing, recommending, merchandizing, advertising, promotion, supply and sale – were safe for use by Plaintiffs and others.

58.     ZYPREXA failed to conform to ELI LILLY's express warranties because ZYPREXA was not safe.  Rather, as set forth above, it entails dangerous side effects, including diabetes and pancreatitis.

59.     At the time LILY expressly warranted ZYPREXA to be safe, it had knowledge of the purpose for which the drug was to be used but nonetheless warranted ZYPREXA to be, in all respects, fit, safe, and effective and proper for such use.  ZYPREXA was unaccompanied by full and adequate warnings of its dangerous side effects that were known or knowable by ELI LILLY at the time of distribution.

60.     Plaintiffs and their physicians relied upon the skill and judgment of ELI LILLY, and upon said express warranty, in using the aforesaid product.

61.     ELI LILLY's warranty and representations were untrue in that ZYPREXA was unsafe and therefore unsuited for the use for which it was intended.

62.     As soon as the nature of ZYPREXA and the falsity of ELI LILLY's warranty and representations were ascertained, ELI LILLY was notified of the breach of its express warranty.

63.     ELI LILLY's breach of its express warranties proximately caused injury to Plaintiffs.

### SIXTH CAUSE OF ACTION
### [Fraud]

64.     Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

65.     ELI LILLY knowingly, falsely, maliciously and fraudulently represented to Plaintiffs and the general public that ZYPREXA was safe for use by consumers. These representations were, in fact, untrue.  In reality, ZYPREXA is unreasonably dangerous and unsafe, due to improper and inadequate manufacturing, compounding, testing, inspection, packaging, labeling, distribution, marketing, examination, and/or warning, and it consequently causes diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain.

66.     When ELI LILLY affirmatively misrepresented the safety of ZYPREXA, it knew its representations to be false.  ELI LILLY knowingly, falsely, maliciously and fraudulently made these representations of ZYPREXA's safety with the intent to defraud and deceive consumers, including Plaintiffs, and with the intent to induce them, including Plaintiffs, to take the drug thinking it to be safe.

67.     In addition to ELI LILLY's deliberate misrepresentations, ELI LILLY committed fraud by concealment in that it knowingly, falsely, maliciously and fraudulently concealed and suppressed material facts regarding ZYPREXA's lack of safety from consumers with the intent to induce them, including Plaintiffs, to take the drug thinking it to be safe.  ELI LILLY intentionally engaged in this knowing, false, malicious and fraudulent concealment despite its duty to adequately and fully warn of

ZYPREXA's dangerous side effects, including but not limited to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain.

68. After ELI LILLY knowingly, falsely, maliciously and fraudulently represented ZYPREXA to be safe – and knowingly, falsely, maliciously and fraudulently concealed and suppressed the truth about ZYPREXA's dangerous side effects – consumers, including Plaintiffs, reasonably relied on ELI LILLY's misrepresentations as to safety and silence about diabetes and pancreatitis, and therefore took the drug, having no idea it would injure them. Not surprisingly, consumers, including Plaintiffs, could not reasonably know of the falsity of ELI LILLY's representations and silence, but instead reasonably relied on the statements made by the maker of the drug, and the lack thereof, as to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain.

69. If Plaintiffs had known the actual facts about ZYPREXA's dangerousness and causal link to diabetes, pancreatitis, diabetic coma, hyperglycemia and weight gain, they would not have taken the drug.

70. ELI LILLY's fraud and deceit by misrepresentation and concealment injured Plaintiffs in that it induced them to take the drug, which has proximately caused Plaintiffs' injuries.

### SEVENTH CAUSE OF ACTION
**[Unjust Enrichment]**

71. Plaintiffs hereby incorporate by reference all previous paragraphs as if fully set forth herein.

72.     As a direct, proximate, and foreseeable result of ELI LILLY's actions and otherwise wrongful conduct, as set forth in this complaint, Plaintiffs and innumerable other consumers were gravely harmed.

73.     ELI LILLY profited and benefited from the sale of ZYPREXA even as it injured Plaintiffs and others.  As noted above, ZYPREXA became ELI LILLY's best selling drug, earning the company billions of dollars.

74.     ELI LILLY has voluntarily accepted and retained profits from the sale of ZYPREXA with full knowledge and awareness that, as a result of its unconscionable and intentional wrongdoing, consumers, including Plaintiffs, were not receiving products of the quality, nature, fitness, or value that had been represented by ELI LILLY, or that reasonable consumers expected.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief from Defendant as follows:

1.     Damages in excess of the jurisdictional minimum of this Court, including:

   a.  Compensatory damages, including but not being limited to, medical expenses, lost wages, lost monetary support, funds expended on ZYPREXA, damages for mental anguish, damages for pain and suffering, damages for loss of society and consortium, and all other compensatory damages established by the evidence and allowed by law;

   b.  Exemplary damages;

   c.  Consequential damages; and

      d.  Special damages;

2.      Disgorgement of profits,

3.      Reasonable attorneys' fees and costs,

4.      Prejudgment and post-judgment interest as provided by law,

5.      Costs of suit, and

6.      Such other and further relief to which Plaintiff may be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial in this action.

Respectfully submitted,

_____
Martin J. Siegel, Texas Bar #18342125
Watts Law Firm, L.L.P.
815 Walker Street
16th Floor
Houston, Texas 77002
(713) 225-0500
(713) 225-0566 - FAX

_____
Tommy R. Pittenger, Louisiana Bar #21819
E Eric Guirard Injury Lawyers, PLC
1075 Government Street
Baton Rouge, LA 70802
Telephone: (225) 379-3333
Facsimile: (225) 379-3411

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Hodges Crumb, Timothy Doyle, Daryl Gathers, Gladys Jackson, Loudy Jones, Sandra O'Shaugnessy Theresa Shinard-Ducre, Jacquelyn White, Maureen Sanchez and Gloria Smith

(b) County of Residence of First Listed Plaintiff **Catahoula Parish**
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS
Eli Lilly and Company

County of Residence of First Listed Defendant **Marion**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Watts Law Firm (713) 225-0500
815 Walker Street
16th Floor
Houston, TX 77002

E Eric Guirard Injury Lawyers
1075 Government Street
Baton Rouge, LA 70802
(225) 379-3333

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- G 1 U.S. Government Plaintiff
- G 2 U.S. Government Defendant
- G 3 Federal Question (U.S. Government Not a Party)
- G 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | G 1 | G 1 | Incorporated or Principal Place of Business In This State | G 4 | G 4 |
| Citizen of Another State | G 2 | G 2 | Incorporated and Principal Place of Business In Another State | G 5 | G 5 |
| Citizen or Subject of a Foreign Country | G 3 | G 3 | Foreign Nation | G 6 | G 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| G 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | G 610 Agriculture | G 422 Appeal 28 USC 158 | G 400 State Reapportionment |
| G 120 Marine | G 310 Airplane | G 362 Personal Injury — | G 620 Other Food & Drug | | G 410 Antitrust |
| G 130 Miller Act | G 315 Airplane Product | Med. Malpractice | G 625 Drug Related Seizure | G 423 Withdrawal | G 430 Banks and Banking |
| G 140 Negotiable Instrument | Liability | G 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | G 450 Commerce/ICC Rates/etc. |
| G 150 Recovery of Overpayment | G 320 Assault, Libel & | Product Liability | G 630 Liquor Laws | | G 460 Deportation |
| & Enforcement of Judgment | Slander | G 368 Asbestos Personal | G 640 R.R. & Truck | **PROPERTY RIGHTS** | G 470 Racketeer Influenced and |
| G 151 Medicare Act | G 330 Federal Employers' | Injury Product | G 650 Airline Regs | G 820 Copyrights | Corrupt Organizations |
| G 152 Recovery of Defaulted | Liability | Liability | G 660 Occupational | G 830 Patent | G 810 Selective Service |
| Student Loans | G 340 Marine | **PERSONAL PROPERTY** | Safety/Health | G 840 Trademark | G 850 Securities/Commodities/ |
| (Excl. Veterans) | G 345 Marine Product | G 370 Other Fraud | G 690 Other | | Exchange |
| G 153 Recovery of Overpayment | Liability | G 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | G 875 Customer Challenge |
| of Veteran's Benefits | G 350 Motor Vehicle | G 380 Other Personal | G 710 Fair Labor Standards | G 861 HIA (1395ff) | 12 USC 3410 |
| G 160 Stockholders' Suits | G 355 Motor Vehicle | Property Damage | Act | G 862 Black Lung (923) | G 891 Agricultural Acts |
| G 190 Other Contract | Product Liability | G 385 Property Damage | G 720 Labor/Mgmt. Relations | G 863 DIWC/DIWW (405(g)) | G 892 Economic Stabilization Act |
| G 195 Contract Product Liability | G 360 Other Personal Injury | Product Liability | | G 864 SSID Title XVI | G 893 Environmental Matters |
| | | | G 730 Labor/Mgmt. Reporting | G 865 RSI (405(g)) | G 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | G 895 Freedom of Information Act |
| G 210 Land Condemnation | G 441 Voting | G 510 Motions to Vacate | G 740 Railway Labor Act | G 870 Taxes (U.S. Plaintiff | G 900 Appeal of Fee Determination |
| G 220 Foreclosure | G 442 Employment | Sentence | G 790 Other Labor Litigation | or Defendant) | Under Equal Access to |
| G 230 Rent Lease & Ejectment | G 443 Housing/ | Habeas Corpus: | G 791 Empl. Ret. Inc. | G 871 IRS—Third Party | Justice |
| G 240 Torts to Land | Accommodations | G 530 General | Security Act | 26 USC 7609 | G 950 Constitutionality of |
| G 245 Tort Product Liability | G 444 Welfare | G 535 Death Penalty | | | State Statutes |
| G 290 All Other Real Property | G 440 Other Civil Rights | G 540 Mandamus & Other | | | G 890 Other Statutory Actions |
| | | G 550 Civil Rights | | | |
| | | G 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- G 1 Original Proceeding
- G 2 Removed from State Court
- G 3 Remanded from Appellate Court
- G 4 Reinstated or Reopened
- G 5 Transferred from another district (specify)
- G 6 Multidistrict Litigation
- G 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity under 28 USC 1332/Products/drug/liability - manufacture - design & distribution

## VII. REQUESTED IN COMPLAINT:
G CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: G Yes  G No

## VIII. RELATED CASE(S) IF ANY (See instructions):
unknown

JUDGE

DOCKET NUMBER

DATE 3/1/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 85957   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE